UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Grace Dwyer, | No. 2:18-cv-01554-KJM-DMC |
| Plaintiff, | ORDER |
| v. | |
| City of Chico, et al., | |
| Defendants. | |

Grace Dwyer, who has been diagnosed with multiple sclerosis, tripped and fell on an uneven sidewalk in downtown Chico, California. She filed this lawsuit against the City and several other defendants, asserting claims under the Rehabilitation Act, the Americans with Disabilities Act, and related state laws. She now moves for partial summary judgment on the City's liability. As explained below, because several factual disputes remain unresolved, the motion is **denied**.

I.    BACKGROUND

Ms. Dwyer testified she was diagnosed with multiple sclerosis in 1990, when she was partially paralyzed for three months. Dwyer Dep. at 24, 29, ECF No. 38-4.[1] She remembers her

---

[1] The City objects to Ms. Dwyer's reliance on her deposition testimony in its opposition to her motion because the transcript attached to her motion omitted the reporter's certification. *See* Opp'n at 7, ECF No. 37; Objs. at 2–3, ECF No. 37-2. The City agreed at hearing, however, that

1

1 lower body growing numb, having difficulty walking, losing balance and coordination, and
2 feeling fatigued. *See id.* at 24–25, 28–29. These symptoms have not resurfaced, *see id.* at 29, but
3 a few years later, a lesion in her optical nerve caused temporary blindness in her left eye, *id.* at
4 25–26. Since then, she has also experienced vertigo, aches and pain on the left side of her body,
5 poor balance, and what she describes as a "lifting and directional problem" with her left leg. *Id.*
6 at 30–31, 34, 38–39, 44. These symptoms match those described in many publicly available
7 sources as common symptoms of multiple sclerosis, including online patient guides from the
8 Mayo Clinic, medical dictionaries, and judicial decisions. *See, e.g.*, *Bona v. MetLife Disability*
9 *Ins. Co.*, No. 03-00627, 2004 WL 5582870, at *7 (N.D. Cal. Jan. 20, 2004) (citing fatigue, lack of
10 coordination, and numbness as symptoms of multiple sclerosis); Mayo Clinic, Patient Care &
11 Health Information, Diseases & Conditions, Multiple Sclerosis (June 22, 2020)[2] (listing
12 numbness and weakness in limbs and "loss of vision, usually in one eye at a time," as symptoms
13 of multiple sclerosis, among others); Stedman's Medical Dictionary "802480 multiple sclerosis
14 (MS)" (Nov. 2014) (describing MS as common disorder of central nervous system causing vision
15 loss and weakness, among other symptoms).

16 Despite her symptoms, Ms. Dwyer was doing well overall in 2018. Dwyer Dep. Tr. 44,
17 47. She had a limp and occasional pain and her balance was a "little off," *id.* at 44, but this did
18 not stop her from kayaking, hiking and walking on trails, riding her bike four miles or more every
19 day, and working out at the gym four or five times a week, *id.* at 47–48, 51–53.

20 But at lunchtime on a sunny February day in 2018, Ms. Dwyer was walking along the
21 sidewalk on Broadway Street in Chico. *Id.* at 65, 68, 72. She was familiar with the street and
22 was sure she had been there before, *see id.* at 74, but that day, she hit her right foot on something,
23 tripped, and fell. *See id.* at 77, 80–85. In her deposition, she pointed out where it happened on a
24 picture of the sidewalk: beside a large tree, a section of the concrete pavement jutted noticeably
25 higher above its neighbors, perhaps pushed out of place by the roots of the tree below. *See* Pl.'s

---

Ms. Dwyer had cured that error by filing a certified copy with her reply. *See generally* Pls. Suppl. Exs., ECF No. 38-4. The court relies on the authenticated transcript here.

[2] https://www.mayoclinic.org/diseases-conditions/multiple-sclerosis/symptoms-causes/syc-20350269, last visited Apr. 7, 2021.

1   Exs. at 124, ECF No. 38-4 (picture of the spot); Dwyer Dep. at 80 (her testimony about the
2   picture). Medical records from soon after the fall report she was in pain and had bruises and other
3   injuries to her spine and head, and they confirm her multiple sclerosis diagnosis, which allegedly
4   worsened after the fall. *See* Emergency Rep., Pl.'s Exs. at 123–24, ECF No. 34-3.[3]

5   Ms. Dwyer filed this lawsuit a few months later. *See* Compl., ECF No. 1. She asserts
6   claims under the ADA, the Rehabilitation Act, the California Disabled Persons Act, the Unruh
7   Civil Rights Act, the California Health and Safety Code, as well as a claim for common law
8   premises liability. *See* First Am. Compl. ¶¶ 15–56, ECF No. 5. In addition to the City, she also
9   named the co-owners of a restaurant near the spot where she fell, *see id.* ¶¶ 6–7, but after the City
10  acknowledged that it and not the restaurant owned and controlled the sidewalk and tree, she
11  agreed to dismiss her claims against the restaurant owners, *see* Stip., ECF No. 28-1. Her efforts
12  to reach a settlement agreement with the City proved unsuccessful. S*ee* Joint Status Rep., ECF
13  No. 31. She then filed this motion for partial summary judgment. *See* ECF No. 34.

14  The motion seeks summary judgment of the City's liability under the ADA, the
15  Rehabilitation Act, the California Disabled Persons Act, and the Unruh Civil Rights Act. *See*
16  Mot. at 5–11, ECF No. 34-1. It does not request an order on damages. *See id.* at 11. The City
17  opposes, arguing three central factual disputes remain unresolved:

18  • Whether Ms. Dwyer was a "qualified individual with a disability" at the time she fell,
19     *see* Opp'n at 6–8, ECF No. 37;
20  • Whether the condition of the sidewalk was so poor that it fell short of relevant
21     statutory and regulatory standards, *see id.* at 8–10; and
22  • Whether the City was deliberately indifferent to the condition of its sidewalks, *see id.*
23     at 12–15.

24  /////

---

[3] The City objects that these medical records lack foundation, were not properly authenticated, contain hearsay, and are misleading and unfairly prejudicial. *See* Objs. at 3–4, ECF No. 37-2. These objections are moot. The extent of Ms. Dwyer's alleged injuries is irrelevant because she is not attempting to prove damages in this motion. *See* Mot. at 11, ECF No. 34-1. The City also confirmed at hearing that it does not dispute her diagnosis of multiple sclerosis after her fall.

1  The City also contends the complaint does not actually assert any claims against it under
2  California law, rather only under federal law. *See id.* at 10–12. Ms. Dwyer filed a reply. ECF
3  No. 38. The court heard oral argument via videoconference. Scottlynn Hubbard appeared for
4  Ms. Dwyer,[4] and Roger Colvin appeared for the City. Hr'g Minutes, ECF No. 40.

## II.  LEGAL STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If that party bears the burden of proof at trial, as Ms. Dwyer does here in establishing the City's liability, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). To carry their burdens, both parties must "cit[e] to particular parts of materials in the record . . . ; or show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts."). Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

---

[4] Mr. Hubbard has since been suspended from the practice of law. *See* Not., ECF No. 42. Ms. Dwyer is still represented by Joseph Zink. *See id.*

1    In deciding a motion for summary judgment, the court draws all inferences and views all
2    evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88.
3    "Where the record taken as a whole could not lead a rational trier of fact to find for the non-
4    moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Ariz. v.*
5    *ECities Serv. Co.*, 391 U.S. 253, 289 (1968)).

6    A court may consider evidence as long as it is "admissible at trial." *Fraser v. Goodale*,
7    342 F.3d 1032, 1036 (9th Cir. 2003). "Admissibility at trial" depends not on the evidence's form,
8    but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001) (citing *Celotex*
9    *Corp.*, 477 U.S. at 324). The party seeking admission of evidence "bears the burden of proof of
10   admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002). If the
11   opposing party objects to the proposed evidence, the party seeking admission must direct the
12   district court to "authenticating documents, deposition testimony bearing on attribution, hearsay
13   exceptions and exemptions, or other evidentiary principles under which the evidence in question
14   could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86 (9th Cir.
15   2010). These rules are more stringently enforced when evidence is offered in support of a motion
16   for summary judgment because "[v]erdicts cannot rest on inadmissible evidence." *Burch v.*
17   *Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1121 (E.D. Cal. 2006) (alteration in original)
18   (quoting *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir.
19   2000)). Courts are generally "much more lenient" with the evidence of the party opposing
20   summary judgment. *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979).

21   The Supreme Court has also taken care to note that district courts should act "with caution
22   in granting summary judgment," and have authority to "deny summary judgment in a case where
23   there is reason to believe the better course would be to proceed to a full trial." *Anderson*,
24   477 U.S. at 255. A trial may be necessary "if the judge has doubt as to the wisdom of terminating
25   the case before trial." *Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1507
26   (9th Cir. 1995) (quoting *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994)). This may be
27   the case "even in the absence of a factual dispute." *Rheumatology Diagnostics Lab., Inc v. Aetna,*
28   /////

1  *Inc.*, No. 12-05847, 2015 WL 3826713, at *4 (N.D. Cal. June 19, 2015) (quoting *Black*, 22 F.3d
2  at 572); *accord Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001).

**III.   ANALYSIS**

Ms. Dwyer focuses her arguments on the Rehabilitation Act and Title II of the ADA. *See* Mot. at 3–5. These statutes impose essentially identical obligations. *See Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999). Under section 504 of the Rehabilitation Act, "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794. Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To prevail, then, in her claims under both statutes, Ms. Dwyer must prove three things: "(1) she is a qualified individual with a disability; (2) she was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and (3) such exclusion or discrimination was by reason of her disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). As explained below, she has not carried her burden to establish these elements beyond reasonable dispute.

**A.   Qualified Individual with a Disability**

As discussed at hearing, the City agrees multiple sclerosis qualifies as a disability for purposes of the ADA. It opposes Ms. Dwyer's motion because it contends she has not established beyond dispute that her condition qualified as a "disability" on the day she fell.

Under both the ADA and the Rehabilitation Act, "[t]he term 'disability' means, with respect to an individual—(a) a physical or mental impairment that substantially limits one or more major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1); *see also* 29 U.S.C. § 705(9)(A)–(B) (including definition of terms under Rehabilitation Act and specifically referencing ADA definition). "[M]ajor life activities" include walking and seeing, among many

1   others not relevant here. *See* 42 U.S.C. § 12012(2)(A). The ADA Amendment Act of 2008 also
2   established "[r]ules of construction regarding the definition of disability," including that the Act
3   must be "construed in favor of broad coverage . . . to the maximum extent permitted by the terms
4   of [the ADA]." *Id.* § 12102(4)(A). In addition, "[a]n impairment that is episodic or in remission
5   is a disability if it would substantially limit a major life activity when active." *Id.* § 12102(4)(D).

6   　　　Ms. Dwyer relies on her deposition testimony and her post-accident diagnosis to argue she
7   had a "disability" on the day of her fall. *See* Mot. at 5–6. Indeed she testified she was diagnosed
8   with multiple sclerosis in 1990 and has suffered temporary paralysis and blindness in one eye.
9   *See* Dwyer Dep. Tr. at 24–25, 28–29. Since 1990, she has also experienced vertigo, aches and
10  pain, poor balance, and a lifting and directional problem in her left leg. *See id.* at 30–31, 34, 38–
11  39, 44. The City offers no evidence to contradict this testimony. It does not dispute that the
12  symptoms she describes are commonly reported symptoms of multiple sclerosis. It also does not
13  contest that she had multiple sclerosis after she fell. *See* Opp'n at 7. Undisputed testimony such
14  as Ms. Dwyer's here suffices to prove a fact at summary judgment. *See, e.g.*, *Wilson v. Haria and
15  Gogri Corp.*, 479 F. Supp. 2d 1127, 1130 n.3 (E.D. Cal. Mar. 22, 2007) (holding in ADA case
16  that plaintiff's uncontroverted declaration was alone sufficient to establish undisputed facts in
17  support of motion for summary judgment). It is thus undisputed that Ms. Dwyer suffered from
18  multiple sclerosis at the time of her fall.

19  　　　This diagnosis does not, however, entitle Ms. Dwyer to summary judgment on the first
20  element of her ADA and Rehabilitation Act claims. Sometimes a person diagnosed with multiple
21  sclerosis has a "disability" under the ADA, but not always. *See, e.g.*, *Bower v. City & Cty. of San
22  Francisco*, No. 09-03507, 2011 WL 569882, at *6 (N.D. Cal. Feb. 14, 2011), *aff'd*, 490 F. App'x
23  854 (9th Cir. 2012) (collecting authority). The result depends on the practical consequences of
24  the disease for the plaintiff's "major life activities." In *Bower*, for example, the plaintiff's
25  multiple sclerosis caused "persistent numbness in his leg, . . . occasional eye-twitching, and mild
26  numbness in his hand," but he was not "disabled" under the ADA because he could walk, see,
27  work, and even run a marathon. *See id.* at *5. By contrast, in *Braunling v. Countrywide Home
28  Loans, Inc.*, the plaintiff, who had been diagnosed with multiple sclerosis, had a "disability"

under the ADA due to her "poor ambulation ability and extreme fatigue." 220 F.3d 1154, 1157 (9th Cir. 2000).

Because Ms. Dwyer would bear the burden at trial to prove the elements of her claims, she can succeed here only if no reasonable fact-finder could disagree that her multiple sclerosis imposed substantial limitations on her major life activities on the day she fell. The record before the court does not permit that conclusion. Despite a limp, pain, and some difficulty balancing, Ms. Dwyer often went kayaking, hiking, biking, and to the gym. Dwyer Dep. Tr. at 47–48, 51–53. A reasonable fact-finder could conclude on the basis of this evidence that her multiple sclerosis did not substantially limit her ability to see and walk, the "major life activities" at issue.

This is not to say a fact-finder would reject her claims. A jury might very well conclude that her past paralysis, vision loss, fatigue, and other symptoms were merely in "remission" under 42 U.S.C. § 12102(4)(D) at or shortly before the time of her fall, for example. If so, and if these conditions would have substantially limited her ability to walk or see if the conditions had been "active" in February 2018, she would indeed have an ADA "disability" on the day she fell. *See id.* But she has cited no evidence—no medical records, no declaration from a physician, no expert testimony—to establish her disease was in "remission," and therefore lurking. As summarized above, the ADA also permits a plaintiff to prove a disability by relying on evidence showing a past symptom is "episodic." *See id.* But courts have understood "episodic" to mean "the condition occurs more than once." *Bresaz v. Cty. of Santa Clara*, 136 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015). Here, Ms. Dwyer has not cited evidence showing she has suffered from the more severe symptoms of her condition, such as paralysis or vision loss, more than once. For these reasons, she is not entitled to summary judgment on the first element of her claims under the ADA and Rehabilitation Act.

**B.    Exclusion from Public Services by Reason of Disability**

The remaining elements of a claim under the ADA and Rehabilitation Act require Ms. Dwyer to show she was "excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities . . . by reason of [her] disability." *Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014). The City does not dispute that it

1   is a "public entity" and that the ADA and Rehabilitation Act apply to the construction and
2   maintenance of public sidewalks. *See* Opp'n at 8; *see also Barden v. City of Sacramento*,
3   292 F.3d 1073, 1076 (9th Cir. 2002). Nor does it "contest the ADA and Rehabilitation Act
4   standards" that apply to city sidewalks. Opp'n at 8. The parties dispute, however, whether the
5   City shirked its responsibility to maintain the sidewalk on Broadway in downtown Chico.

6          The evidence does not show the City violated the ADA. Ms. Dwyer relies on her
7   deposition testimony and pictures of the sidewalk to argue otherwise. *See, e.g.,* Reply at 6–9.
8   But she does not know what caused the sidewalk to be uneven or how long it was uneven. *See*
9   Dwyer Dep. Tr. 85. She does not know if anyone else had ever tripped in the same spot she did.
10  *See id.* at 85–86. She did not take any measurements. *Id.* at 92. The pictures of the sidewalk
11  attached to her motion are also undated, and the photographer remains anonymous. *See* Pl.'s Exs.
12  at 147–58, ECF No. 34-3; Pl.'s Suppl. Exs. at 281–82, ECF No. 38-4. Ms. Dwyer did not clarify
13  these ambiguities in her deposition. Without such a foundation, the photos would be inadmissible
14  at trial. *See, e.g.*, *United States v. Stearns*, 550 F.2d 1167, 1170 (9th Cir. 1977) (Kennedy, J.)
15  (photos are inadmissible without foundation reducing dangers of distortion, "wrong emphasis," or
16  the misleading depiction of an irrelevant subject). Contrary to Ms. Dwyer's argument in reply,
17  the pictures are not admissible based on their "appearance, contents, internal patterns, or other
18  distinctive characteristics." *See* Reply at 6–7 (citing Fed. R. Evid. 901(b)(4)). The photos'
19  characteristics do not explain, for example, when they were taken, whether they accurately show
20  the condition of the sidewalk on the day of Ms. Dwyer's fall, and whether the measurements
21  depicted in some of them are accurate.

22         The court cannot grant summary judgment on the basis of evidence that would be
23  inadmissible at trial. *See Burch*, 433 F. Supp. 2d at 1121. Even if the photos were admissible, the
24  sidewalk's compliance with the "vast body of regulations implementing Title II" would remain
25  uncertain. *Cohen*, 754 F.3d at 695. Ms. Dwyer's motion does not grapple with those regulations;
26  it merely cites them and asserts violations. *See* Mot. 8–9. Nor do the cited provisions establish
27  the City's noncompliance. Ms. Dwyer cites 2004 standards, for example, to argue "at least one
28  accessible route" must be available on "public streets and sidewalks," *Id.* at 9 n.31 (emphasis

omitted). That argument assumes without evidence or authority that the uneven portion of the sidewalk where Ms. Dwyer tripped was on the only accessible route on the day she fell. This evidentiary gap also precludes summary judgment.

### IV. CONCLUSION AND FINAL PRETRIAL CONFERENCE

#### A. Disposition

Genuine disputes of material fact prevent the court from concluding as a matter of law that the City violated the ADA and Rehabilitation Act. The court therefore does not consider whether the City was deliberately indifferent or whether Ms. Dwyer is entitled to summary judgment on her state law claims. The court does conclude, however, that these state claims were asserted against the City. *See* First Am. Compl. ¶ 1 (defining "the defendants" to include the City); *id.* ¶¶ 39, 45, 52, 53 (asserting claims three through six against all "defendants"); *see also* Fed. R. Civ. P. 8(a)(2) (requiring only "a short and plain statement of the claim"). **The motion for partial summary judgment is denied**.

#### B. Final Pretrial Conference

A final pretrial conference is set for **June 18, 2021, at 10:00 a.m. before the undersigned.**[5] At least one of the attorneys who will conduct the trial for each of the parties shall attend the Final Pretrial Conference. If by reason of illness or other unavoidable circumstance a trial attorney is unable to attend, the attorney who attends in place of the trial attorney shall have equal familiarity with the case and equal authorization to make commitments on behalf of the client.

Counsel for all parties are to be fully prepared for trial at the time of the Final Pretrial Conference, with no matters remaining to be accomplished except production of witnesses for oral testimony. **The parties shall confer and file a joint pretrial conference statement by May 28, 2021. Concurrently with the filing of the Joint Final Pretrial Conference Statement, counsel shall submit to chambers the word processable version of the Statement, in its entirety (including the witness and exhibit lists) to:** kjmorders@caed.uscourts.gov. The

---

[5] The court calendar for this date will indicate whether the hearing will be held by videoconference or in the courtroom.

provisions of Local Rule 281 shall apply with respect to the matters to be included in the joint pretrial statement. In addition to those subjects listed in Local Rule 281(b), the parties are to provide the court with the following:

1. A plain, concise statement that identifies every non-discovery motion previously tendered to the court and its resolution.

2. A concise, joint list of undisputed core facts that are relevant to each claim. Disputed core facts should then be identified in the same manner. The parties are reminded not to identify every fact in dispute but only those disputed facts that are essential to the formulation of each claim. Each disputed fact and undisputed fact should be separately numbered or lettered. Where the parties are unable to agree on the core disputed facts, they should nevertheless list core disputed facts in the above manner.

3. Concise lists of disputed evidentiary issues that will be the subject of a party's motion *in limine*, and whether the parties believe resolution of any of these motions will be necessary before the first day of trial.

4. Each party's points of law, which concisely describe the legal basis or theory underlying their claims and defenses. Points of law should reflect issues derived from the core undisputed and disputed facts. Parties shall not include argument with any point of law; the parties may include concise arguments in their trial briefs.

5. A joint statement of the case in plain concise language, which will be read to the jury during voir dire and at the beginning of the trial. The purpose of the joint statement is to inform the jury what the case is about.

6. The parties' position on the number of jurors to be impaneled to try the case.

7. The parties' report on settlement discussions to date and other information related to settlement that will allow the court to schedule a final pretrial settlement conference.

/////

8. The parties' positions on whether they will consent to a magistrate judge trying the case, given the significant backlog of criminal cases pending before the district court.

Discovery documents to be listed in the pretrial statement shall not include documents to be used only for impeachment and in rebuttal.

The parties are reminded that pursuant to Local Rule 281 they are required to attach to the Final Pretrial Conference Statement an exhibit listing witnesses and exhibits they propose to offer at trial. After the name of each witness, each party shall provide a brief statement of the nature of the testimony to be proffered. The parties may file a joint list or each party may file separate lists. These list(s) shall not be contained in the body of the Final Pretrial Conference Statement itself, but shall be attached as separate documents to be used as addenda to the Final Pretrial Order.

Plaintiff's exhibits shall be listed numerically. Defendant's exhibits shall be listed alphabetically. The parties shall use the standard exhibit stickers provided by the court: pink for plaintiff and blue for defendant. In the event that the alphabet is exhausted, the exhibits shall be marked AA, AB, AC, . . . AZ, then BA, BB, BC, . . . BZ, and so on through ZZ, as necessary. All multi-page exhibits shall be stapled or otherwise fastened together and each page within the exhibit shall be numbered. The list of exhibits shall not include excerpts of depositions to be used only for impeachment. In the event that plaintiff(s) and defendant(s) offer the same exhibit during trial, that exhibit shall be referred to by the designation the exhibit is first identified. The court cautions the parties to pay attention to this detail so that all concerned, including the jury, will not be confused by one exhibit being identified with both a number and a letter. The parties are encouraged to consult concerning exhibits and, to the extent possible, provide joint exhibits, which shall be designated as JX and listed numerically, e.g., JX-1, JX-2. **Counsel shall produce all trial exhibits to Casey Schultz, the Courtroom Deputy, no later than 3:00 p.m. on the Friday before trial.**

The Final Pretrial Order will contain a stringent standard for the offering at trial of witnesses and exhibits not listed in the Final Pretrial Order, and the parties are cautioned that the

/////

standard will be strictly applied.  On the other hand, the listing of exhibits or witnesses that a party does not intend to offer will be viewed as an abuse of the court's processes.

Failure to comply with Local Rule 281, as modified by this order, may be grounds for sanctions.

The parties also are reminded that pursuant to Rule 16 of the Federal Rules of Civil Procedure it will be their duty at the Final Pretrial Conference to aid the court in: (a) the formulation and simplification of issues and the elimination of frivolous claims or defenses; (b) the settling of facts that should properly be admitted; and (c) the avoidance of unnecessary proof and cumulative evidence.  Counsel must cooperatively prepare the joint Final Pretrial Conference Statement and participate in good faith at the Final Pretrial Conference with these aims in mind.[6]  A failure to do so may result in the imposition of sanctions which may include monetary sanctions, orders precluding proof, elimination of claims or defenses, or such other sanctions as the court deems appropriate.

This order resolves ECF No. 34.

IT IS SO ORDERED.

DATED: April 9, 2021.

CHIEF UNITED STATES DISTRICT JUDGE

---

[6] "If the pretrial conference discloses that no material facts are in dispute and that the undisputed facts entitle one of the parties to judgment as a matter of law," the court may summarily dispose of the case or claims.  *Portsmouth Square v. Shareholders Protective Comm.*, 770 F.2d 866, 868-69 (9th Cir. 1985).